And we have Mr. Drew on behalf of the appellant, so to speak, and then we have Michelle Shaffer on behalf of the appellant. You may proceed, Mr. Drew. I'm here for the support based on an order finding for sanctions against my law firm, an associate of my law firm. For the failure to appear at hearings as well as for violating an order of the court, my office provides certain documentation to the appellee, respondent appellee, Ms. Brown. There was a notice to appear and produce under Supreme Court Rule 237 that was set for the morning of July 28, 2010. It was set on the hearing for a petition that my client had filed. We had filed on behalf of my client, Mr. Brown. The hearing was set for then well in advance of that. Counsel for Mrs. Brown contacted my office, requested and agreed upon continuance because of certain documentation she had not received at that time. My office agreed with the continuance and agreed motion to continue was prepared by counsel for the respondent and filed before the court. But an agreed motion by lawyers doesn't bind the court. It does not, sir. And it certainly does not. But it was there, and I think it's talking to the reason for the sanctioning of my office for not appearing on that morning. Based upon that, this is Saline County. Judge Lieberman is a floating judge who doesn't sit regularly in Saline County. So it isn't a case where you allow a motion, an agreed motion, to continue before a judge who sits there every day. He has looked at the motion. He has denied the motion. He or she, in this case a male, had denied the motion or had reviewed it. There was no way other than the clerk advising him that it had been done. The night before the hearing, we received a call from counsel to a respondent stating, based on the antidote from Mr. Cochran, that, in fact, the order had not been granted continuing the case set by us. Unfortunately, based on the agreement and the wrongful assumption that the court would grant this, this was the first time our petition had ever been set for hearing, and it was agreed upon by the opposing party we were requesting relief from. We believed that that would be the case, so other hearings were left on. So instead of just not voting and ignoring it and telling the court, well, you know, we sent an agreed motion to continue, so never mind, that's not what we did because we were sanctioned here, as if we intentionally violated this and told the court we weren't going to be there. We contacted the court, attempted to set up a conference call that didn't happen the night before. We attempted to do it the next morning, and the court did not do that, and then granted the continuance of the hearing. Should I presume that this is indirect civil contempt because the order doesn't say anything, whether it's direct, indirect, civil, criminal, and if it's indirect civil, don't you have an opportunity to purge yourself of the contempt? And since it's not listed, I took it as indirect civil contempt, and it doesn't say in the order anywhere, and we weren't given an opportunity to come back at 1.30, to come at 11, to come at 10.30. But you weren't sanctioned until the 30th, correct? We weren't sanctioned until... Two days later when you had the opportunity to produce the documents, and those were not produced. Am I correct on that? Well, but we were sanctioned for both, not appearing for the hearing as well as not producing those documents. So we were sanctioned for two separate things, and the court's own order states that we were sanctioned for both reasons. Yes, it does. And we never were given an opportunity to come into the later time of the hearing, to come later that day, or to show up late, or anything. No way to purge it. He just said, you're sanctioned for not appearing here today, and here's what it is. And I think the fact that there was an agreed motion to continue, that my office attempted to set up this telephone conference call with the court, was not a flagrant violation of the court's denial of the motion. Well, I guess an initial refusal to grant it, but ultimately granting the motion to continue. It wasn't a flagrant violation of it, or intentionally subverting the court's authority to do it. We made every arrangement to do that. But you did know that the court had not agreed, in fact, had not just not decided. They had advised you that it was, they were not, the court was not agreeing to the continuance. We got a call from opposing counsel stating that she had called the clerk, and that the order had not been signed, and therefore the clerk had advised that it's not been granted yet. So it's always at your peril, then, if you ignore the fact that a case is not continued. It is, but under the circumstances, I think it's not contentious for us not to appear under the circumstances of this particular case, the way it was set up under those circumstances. Because in granting the sanctions against us, the court never gave us an opportunity to do something at a different time of our own petition. I think there's other remedies for the court. He could say, I deny the motion to continue, we're here to support it. Mr. Drew's office isn't here, his client's not here, your petition's denied. Mr. Drew has said, it's done. But we're, I'm only, I'm not arguing with the fact that we didn't appear. We shouldn't appear. What I'm arguing with the fact is it's being sanctioned for our failure to appear in the manner in which the court did. Because there wasn't any attempt to purge, there wasn't any attempt to remedy the situation that had been created. And not only that, but there were certainly other remedies shy of sanctioning counsel for not appearing that day, because our non-appearance was not an intentional refute of the court's order or the court's rulings, because the court had not ordered, had not denied the motion to continue. In fact, there's no documentation that will show you the court had not ever denied the motion to continue, or that the court had considered it and intended on denying it. So, in fact, it was never denied. And, in fact, it was only granted. And it was granted the morning the hearing was set. Were you given any opportunity on the 30th to address why you did not appear? My associate filed an affidavit as to the reasoning behind why we did not appear, but we were never given an opportunity to say, well, now we can appear and have the hearing, or you can come to me and present these issues as it relates to that. There never was any ability for us to get out under the sanctions as it relates to that contingency. As it relates to the order to compel, under that there was a Supreme Court Rule 237 notice to appear and produce after the morning of July 28th. It is conceded by counsel and respondent that there was never any discovery request received to my office requesting those documents nor requesting any of the issues that related in that notice to appear and produce. However, when the court on the 28th, the court enters a motion to compel, regardless if they filed a proper notice, aren't you then obligated to produce them on the 30th? I think at that point in time we were either obligated to produce them on the 30th or deal with the order that the court set. But as it relates to that order, that motion to compel was filed two days preceding the July 28th. It wasn't filed until July 26th, and no notice of hearing was sent. And at best, counsel and respondent would report to possibly rely upon a unique local rule of the First Judicial Circuit which says that you have ten days to respond to a motion, which is set forth in the local rules. Two days later, the court entered an order to compel without any opportunity for us to respond to it, to say hold on a second, Your Honor, and respond that there was never any underlying discovery request sent, Judge. There was no – you can't do a Supreme Court Rule 237 request to appear and produce because they haven't complied with the underlying Supreme Court rule to send discovery requests. I notice in – and I'll ask Ms. Shacher about this – that in her argument, she says that they filed a ducus tecum and a notice of deposition. Was there a 214 notice ever filed? Not to my knowledge. I know they did that, but that was to my client's employer. I mean, if anything, they had an action possibly against the employer because the employer said we refuse to turn over the documents. Now, that's between respondent's counsel and my client's employer. He had no control over what they did. They just refused to comply with that. Well, if there was a notice of deposition, then certainly you would have had the opportunity to appear at the deposition. But there wasn't a deposition. My understanding was that documents were not provided, and that was the end of it. I think it was a subpoena ducus tecum to produce the documents. And I believe the employer stated to counsel or respondent, we're not producing them because we don't believe we can legally. And I think that's where it ended. I don't know that there was ever an order by the court dealing with that. Nothing was done. Okay. Well, I'll ask Ms. Shacher because it appears that that was improperly done if there wasn't a 214 that accompanied the ducus tecum. And I believe – and I'm not sure as to how that worked out, but because nothing ever came of that from our end because the documents weren't produced, and I don't believe a deposition was ever held whereby they didn't appear and fail to produce the documents. In addition to that, the motion to compel was filed two days prior to this hearing. No notice of hearing was set. It was not set for July 28th, the motion to compel. So my office, not appearing that day, dealt with our underlying petition. But the motion to compel wasn't an issue on July the 28th. It hadn't been set for hearing. Ten days hadn't passed under the local rules for us to respond to. Yet the court entered the next parte order without our having time to respond, nor it being set for hearing, compelling us to provide these HIPAA releases that we did not even have, that counsel had been at – counsel for responding was attempting to get us to sign. I don't believe she had any legal authority to send us a letter and say, you're going to sign these, and then we have to. So she filed a motion to compel on something without ever having had an order ordering us to do it or the proper discovery request that we can do it. And then the order was in. We were ultimately – that HIPAA releases were not provided to counsel for responding. The court then stated – found that we were content for not providing those. Within 30 days of the order to compel, under the motion to compel, we filed a motion that they kicked out of court, stating to the court it was an erroneous order because the motion was filed two days prior. There was no hearing set. This is an improper motion to compel because there was no discovery request of my client that you could predicate a motion to compel upon. There was never any letter or anything done under Supreme Court Rules 201K to comply with things prior to the filing of the motion to compel because there was no discovery request to seek 201K remedies or prior to that. And we filed it within 30 days of the court entering the order to compel, requesting the court to do it. I think we would be in a different position had we merely just taken the sanctions and the order and then filed a notice of appeal. But instead of that, we filed a motion to vacate that court's order to compel of that date within 30 days of the order being entered. And the court denied that motion in the subsequent hearing, stating I'm not going to vacate my order to compel when it wasn't set for hearing. There was never any underlying discovery sent out to do it. And there's no grounds for the motion to compel, and we advised that of the court. I think it would be different if we never gave the trial court an opportunity to say, Look, Judge, I don't believe you had all the facts at the time that order was entered, and we just came to this court saying, Hey, do something different than what the judge did. That's not it. We went to the trial court where I think we should have to say, With all due respect, Your Honor, you didn't have all the facts at the time that order was entered. Here's the actual facts of what happened. There's no underlying discovery request to file a motion to compel against. Supreme Court Rule 201K can't be complied with because there wasn't any discovery request. And when you entered the order, it wasn't set for hearing that day. Our 10 days hadn't elapsed for us to respond to it. So you effectively left us with no ability to object to a motion to compel and then grant it. And yet the court denied that and then sanctioned us for not providing the HIPAA releases under his order to compel. So that's the double sanctions that we received under the circumstances, which I believe were erroneous under the manner in which they took place. Are you contesting the sanction of the attorney's fees of $540? Yes. In essence, that's all we're contesting the cases. Obviously, at this point in time, it had been long since completed. And, in fact, at the day, I believe, of the rule, she'll cause hearing. If I'm not mistaken, I believe counsel in my office provided the HIPAA releases at that point in time, although I don't think ever at that point in time there's still been a proper discovery of what's demonstrated. How do we sort it out, though? Because there's really two issues. I mean, one is your failure to appear, which could have been sanctionable, and the other is the failure to produce the documents. So, I mean, if we decide on one and not on the other? Well, I think under the circumstances, the way I read it, the court sanctioned said that counsel for the respondent had a certain amount of attorney's fees in filing a petition for rule to show clause against us. And the only reason that she would have had to file the rule to show clause is in relation to the failure to provide the HIPAA releases pursuant to the order to compel. So the way I read it, in actuality, while the court does say he sanctioned us and ordered us to pay attorney's fees, the only actual amount of money that was done was based upon that rule to show clause in the time. The way I read the court's order, it doesn't appear that he calculated in counsel for respondent's time for showing up for hearing that morning. He only calculated the rule to show clause in the subsequent hearing about the order to compel. So I think if this court even says that it was appropriate for the court to sanction us, that, in fact, all of the monetary of $540 was, in fact, set forth only under the order to compel. So I think the court could do that. And in essence, they paid the entirety of the fees that were ordered to be paid. If the court did not overturn the finding of contempt of failure to appear at the hearing, but did, in fact, do it under the other, what I believe, erroneous order under the circumstances. Thank you. Thank you, Mr. Drew. Ms. Shaffer? I will be brief and I will be concise because, as Mr. Drew indicated, I didn't ask for contempt. I didn't ask for anyone to be held other than his client in terms of the court order that had been issued. But I think the facts are important in this case, and it's important to understand, especially the historical nature. This case had gone on since 2005, and we had dealt with contemptuous behavior by Mr. Brown on numerous occasions. He had filed his petition to terminate a maintenance order that had been entered by the court years past, and his basis was that he had been injured in a work-related accident and that he had suffered a shoulder injury that required surgery, and that as a result he wouldn't be working and couldn't pay anything to Mrs. Brown. I communicated with Mr. Cockram in terms of what evidence of this do you have, and it was a response that this is what he's told me. So a determination was made not to send an interrogatory under 213 or a request to Mr. Brown under 214 because we were notified that he didn't have the documents from his workers' compensation claim. His employer did, and he didn't have his medical records. But what right, what legal basis do you have just to file a Dukas take-up on an employer without any underlying discovery request? I mean, the rules provide under 201 that you have to follow the discovery rules set out. And, you know, I've had quite a bit of trial practice, and that would come up pretty frequently where all of a sudden there was a Dukas take-up filed on an employer, and you may or may not get notice of it. And the question is, is that appropriate? Is there any legal basis for it? In terms of discovery, because we had communicated together, and I anticipated there wasn't going to be an objection by Mr. Cockram, we thought that was the quickest way. There was no compliance under the Supreme Court rules. I will acknowledge that. Because we received the court notice that this was going to be set the following month, and to try to expedite and eliminate any further court appearances because there have been numerous. All you have to do is send a notice out to the employer and set a deposition on the very same day that you set the Dukas take-up. And we did. You set the 214? There's a notice. There's a notice of deposition. It does not say it's a 214. It's one of those in the alternative. Just go ahead and give us the records, and then you won't have to have a deposition. Correct. That's not a 214. Correct. I'm sure you're aware of that. That is correct, Your Honor. And, again, it was primarily in avoidance of trying to incur additional expenses by these people because neither of them could afford to return to court. And it was my understanding that we had to. But the reality is that's where you run into what you did was the HIPAA violation because all of a sudden the employer is asked to turn over what may be sensitive or actually illegal documents for him to turn over without any input from the employee because there's been no 214. It was our understanding, and, again, not pursuant to formal discovery exchanges, that Mr. Brown had notified his employer that this was an issue that he was facing in court. And when we heard that and when we got the phone call from Big Bridge Mine, they said, We understand what you need. We've been apprised of this, but we need him to sign an authorization. And we then immediately communicated that to Mr. Drew's office as early as the beginning of July, which gave us more than 30 days prior to this hearing that was set to occur. But if you had filed a 214, then Mr. Drew could have gone before the court and said, Look, these are HIPAA-related records. I don't want them released. And then the court would have ruled whether or not the employer was obligated to release them. In terms of objection, though, we weren't told that there was ever any objection to either the retention of the medical information to confirm the injury that had been alleged or the wage differential or the amount of money that Mr. Brown was receiving. So it's your position that before you determine to file a 214, the other party is obligated to tell you whether or not they're going to object to the release of these records? Well, no. I simply communicated with them to try to avoid the lengthy exchange of discovery, and a response that I was told would be, He has nothing in his possession. But then how do you file a motion to compel when you don't have any underlying legal basis for a motion to compel because you haven't filed any discovery request? In terms of the motion to continue that I had filed, and I did, and I contacted Mr. Cochran, it was my understanding, and I don't believe there's a dispute to this, that we were on the same page to do whatever we needed to do at the cheapest price for our clients to obtain the documents necessary to determine the issues at hand. And we did it in this respect. I filed the motion to continue because we had yet to receive any of these documents and didn't want to pursue the hearing without that evidence, and we did agree. But in terms of recognizing that courts don't have to issue those orders to continue, I contacted the court, and it was still on. Judge Lieberman expected the parties and counsel to appear. So that's when I phoned Mr. Cochran at 3, and I said, They understand that we're trying to get these records. The judge still wants us there, and he was aware of that. So that's why we went, to inform him that we were cooperating with one another to get the documents that we needed without the formality of having our clients fight more in terms of this dissolution proceeding that had lasted for five years at this point in time. I'm just suggesting that there are really valid reasons that they have rules for discovery. Absolutely, absolutely. But again, in a sense, we were just trying to communicate and do what we could to work together to determine the true facts of the case. But the facts of this that I believe are important are that Diane Brown and I did appear in court on the 28th, and Mr. Cochran did not. See, in my mind, those are kind of two separate issues. And I agree. I don't have any problem with the fact that when an attorney is aware that a judge has not signed a continuance order, they better be there, and if they aren't, it's at their own peril. I had filed that motion to compel in advance, in my mind as well, anticipating that the court would enter in order to continue and allow us to continue to, by agreement, exchange the documents as we had determined to do. He entered the ruling, and there was never any suggestion to me or to the court that Mr. Brown refused to or failed to acknowledge an obligation or wouldn't cooperate with the signing of the authorizations. And, in fact, the record is clear that there was an opportunity in August, after the court had issued both of the orders, for Mr. Cochran to come into court and to explain to the court why he didn't come to court, first of all, and, second, why the authorizations had not been signed. And there was no objection under 214. There was no objection as to the validity of the obligation. He simply indicated there was a miscommunication between his office and Mr. Brown, and he apologized. You didn't seek contempt. The court did that spontaneously. That is correct. You agree that it's indirect civil, correct? It is indirect civil. The order doesn't say that. I believe that it is. There was no evidence that there was any direct. So you believe that the firm should be allowed to purge itself of contempt or have an opportunity to purge itself? Absolutely, and I believe that it did. I believe that when both parties appeared in court at the court's request on the 19th of August, the court asked Mr. Cochran, why is it that you were not in court? Why is it that you have not produced the documents? And his responses were, I had a conflict. I called the judicial secretary. I told her that I couldn't be here. I was told to be in another county where there was a contested hearing, and he also indicated on the record that he apologized that his client had not yet signed the authorizations, that they were signed and present in court that day, and he in fact handed them to me that day on the 19th. With that, neither one of us, Mr. Cochran or I, expected anything necessarily further to occur, yet it is very well settled that it's the court's judicial discretion to make a determination as to whether he perceives there to be some indirect, contentious behavior on the part of either an attorney or a party, and the court has that authority to pursue that on its own order, which it did by entry of the court's order of August 26th. I assume the court drafted the order on its own. The court did draft the order on its own after we appeared in court on the 19th of August. It was signed by the court on August 24th and filed on August 26th and sent to the parties, and it very clearly depicts the court's reasoning and understanding and reasons why, and I believe that it is Mr. Drew's burden, Mr. Brown's burden, to prove that this court abused its discretion in making the determination that the firm was in contempt and that the court herein reaffirmed the court's decision and that it declined. Thank you. Thank you, Ms. Shaffer. Do you have anything further, Mr. Drew? If I may, as it relates to that, I would note that the 24th day of August, the order of the Honorable Judge Lieberman states in the actual finding, $540 was incurred in bringing the rule to show pause by counsel for the respondent, and if we look at the petition for the rule to show pause, it refers to the reason for this petition is because we had not abided by the order to compel the end of July 28th in providing those document authorizations. So I believe that's 100 percent of it, and I would also note to the court that I, while the trial court in his order sanctioned my office for not appearing in court that day but also for not complying with the order to compel, I would note that the only actual documentation in the before report as to what happened on July 28th is in order, filed July 28th, signed July 28th by the Honorable Joe Lieberman, that says it is therefore ordered the judge that the motion, I'm sorry, that this matter is before the court on a respondent's motion to continue and the court being fully biased in the premises finds said motion should be granted. It is therefore ordered that this clause be continued to the 19th day of August 2010 at 9.30 o'clock a.m., signed that day by the court. The court didn't deny the motion. The court granted the motion to continue, and we got sanctioned for not appearing in a hearing that was continued. And it doesn't say anything in that order that the court said, I'm denying the motion to continue and I'm resetting this hearing for August the 19th, and then you hear by the law firm of Drew, Drew, D.C., and Mr. Cochran or Mr. Drew or whoever chose not to appear here today is going to be sanctioned by this court and we're going to have a hearing about it. He entered an order granting the motion to continue. So we've been sanctioned once for a hearing that was continued, and again by an order to compel that was entered without complying with any of the Elmwood Supreme Court rules. We would ask that not only the sanction of $540 be vacated, but that the finding of contempt as to both issues be vacated. Thank you. Thank you, Mr. Schaffer, Mr. Drew. We'll take the matter under advisement and render.